JAMES E. McINTOSH, M. D., Plaintiff and Appellant, *v.*
ELAINE C. MILLS, Defendant and Respondent.

No. 11172.
Submitted May 8, 1967. Decided July 27, 1967.
430 P.2d 644.

Raymond J. Fox (argued), Missoula, for appellant.

H. L. Garnaas (argued), Garnaas, Murray & Hall, Missoula, for respondent.

80

MR. JUSTICE JOHN C. HARRISON delivered the Opinion of the Court.

This appeal results from a judgment for respondent in the district court of the fourth judicial district.

Dr. James E. McIntosh, appellant, first saw Glenn Mills as a patient on June 10, 1960. Mr. Mills' left lung had been removed about two years before by another doctor. His health had been good until six or seven months before seeing appellant when he had developed severe pains in his left side. Dr. McIntosh placed Mr. Mills in the hospital for ten or eleven days and prescribed pain relieving medications which did not noticeably reduce the pain.

When Mr. Mills entered the hospital, the appellant doctor and Mr. and Mrs. Mills discussed whether Mr. Mills should have a cordotomy. A cordotomy is the surgical cutting of a portion of the spinal cord. Traumatic Medicine and Surgery for the Attorney 216. The seriousness of a cordotomy is shown by this discussion:

"Occasionally, partial or complete removal of intracranial metastatic lesions and cordotomy or rhizotomy are justified for symptomatic relief. The decision to subject patients with incurable ailments to operative procedures of this magnitude necessitates exercise of careful judgment. Such procedures are usually reserved for patients whose symptoms are poorly controlled by less drastic medical measures, and whose life expectancy is estimated to be several months." Traumatic Medicine and Surgery for the Attorney, 216-217.

It was at the same time that the cordotomy was being discussed that Mrs. Mills, respondent, was first informed that Mr. Mills had terminal cancer. The following testimony of Mrs. Mills is useful in understanding the operation and the situation:

"Dr. McIntosh asked Glen to go into the room where they make the observation, and we were in there and Dr. McIntosh said to me, 'Now, you understand that this operation is very,

very dangerous,' and I said, 'Yes, it's what Dr. Quinn had told me,' and he said, 'First of all, before you decide Glen should have this operation, how long did Dr. Quinn give him?' This is the first information that I have that there was any terminal thing to this. In fact, Dr. Quinn had insisted all along and right up to Glen's death that Glen did not have a recurrence of cancer. He never said it." Further on the following testimony of Mrs. Mills is relevant:

"When Glen came out of the dressing room, he sat down to my right and Dr. McIntosh looked at both of us and he said, 'Well, do you think that you want this operation performed now. I think that he should have some medication and see if we can alleviate the pain,' and Glen went to the hospital that day—but before we went to the hospital, directly from the doctor's office, he said to Glen, 'You're sure you want this operation,' and Glen said 'I've got to have some relief. I don't care what it is, but I have got to have some relief of this pain,' and when a man is sitting there talking like that and to all intent and purpose you think he is the one involved of course. I wouldn't have too much to say, would I?"

On June 22, 1960, the operation was performed. There is conflict in testimony between Dr. McIntosh and respondent's witnesses concerning whether pain was alleviated. There is no evidence that the operation was not correctly performed. A few months later Mr. Mills died.

The consultation on June 10th, the operation on June 22 and two office calls amounted to $372.50. Thirty dollars was paid on the bill before Mr. Mills died. Another $25 was paid prior to August 1, 1961. On August 15, 1961, $26 was added to the account; this is 8 percent interest on the bill on that date. Two more $5 payments were made in 1961. Subsequently the interest charge was deducted; a $7.50 credit was also made on the bill in February 1964. This left the amount of the bill at $300.

The first letter of Dr. McIntosh in evidence was dated April 10, 1961. It read:

"Dear Mrs. Mills:

"We would appreciate knowing when Mr. Mills' estate would be settled and his account with us paid. I would appreciate it if you would let us know this at your earliest convenience, Thank you."

Mrs. Mills responded April 27, 1961.

"Dear Dr. McIntosh:

"In answer to your letter concerning Glenn's estate I am sorry to have to tell you Glen had no estate to be settled. The debt load is tremendous for me but I'm doing the best I can. I felt his funeral expense should be taken care of first—maybe I'm wrong. I have that pretty well taken care of now so the doctors and hospitals will come next. Business is slow right now so the payments of necessity will be small for a couple of months. I'm sorry to make you wait, you were at least honest with me.

Sincerely,<br>Elaine Mills."

The next letter of Dr. McIntosh written June 1, 1961, read:

"Dear Mrs. Mills:

I would appreciate it if you would begin making payments of $20 or $25 a month on Glenn's bill. As you know, even at this rate it will take better than a year to complete payment on it. If this is done then carrying charges would not be added to his bill. Thank you." On the back of the letter Mrs. Mills wrote an undated note:

"My only income is from the little cafe. I have many debts left to be paid due to Glenn's illness. I am paying them off as I can—as the smaller ones are paid I will be able to increase your payment. I am sorry but that is the way it is."

Dr. McIntosh wrote on October 11 as follows:

"Dear Mrs. Mills:

"In addition to the payment which I have outlined in a previous letter we would also require a statement from you that you would pay the entire amount of interest that is added periodically to your bill. If this is not forthcoming, we will have no alternative but to turn your account over to Mr. Jack Green as previously mentioned."

Testimony of Dr. McIntosh in the district court read as follows:

"It's a personal letter from Mr. Garnaas to me saying that I advised Mrs. Mills to make a $25.00 payment by the 20th of this month. This is in October, 1961.

"Mr. Garnaas: And she intends to keeping making payments until your bill is paid in its entirety less the interest. If you wish to turn this account over to Mr. Jack Green for collection, you have every right to do so, but I guarantee that it will not speed up the payments because of the fact that Mrs. Mills finds it impossible to pay your account any faster."

Nothing more appears in the record until the $300 debt suit was filed for Dr. McIntosh against Mrs. Mills in a justice court in Missoula on February 27, 1964. It was tried before Justice of the Peace J. E. Brodie and a jury on February 2, 1965. The jury found against Dr. McIntosh; they awarded Mrs. Mills $6.50 for costs and disbursements and $36 for the jury.

An appeal was filed by counsel for Dr. McIntosh in the district court of Missoula county on February 5, 1965. The case was heard de novo before Judge E. Gardner Brownlee on March 10, 1966, after disputes over sufficient sureties and dismissal. The relevant part of Judge Brownlee's judgment read as follows:

"In Justice Court the jury found against the plaintiff on the debt action. Here the evidence presented does not justify a judgment for the plaintiff and against the defendant; on the

defendant's cross-complaint, the evidence does not justify any judgment in her favor.

"THEREFORE, IT IS THE JUDGMENT of this Court that the plaintiff take nothing by his Complaint, and that the defendant take nothing on her Cross-Complaint." The cross-complaint concerned the $72.50 which had been paid and credited on the original bill of $372.50. There were no specific findings of fact and conclusions of law entered by the district court.

The first basis for appeal is that the district court erred in failing to find the facts specially and state separately its conclusions of law thereon as required by Rule 52(a) of the Montana. Rules of Civil Procedure. In view of our disposition of this cause no necessity exists to discuss this specification further.

The second specification of error is that the district court erred because its judgment that "plaintiff take nothing by his complaint" is not supported by any material evidence in the record.

Here the respondent testified that she never felt she was liable for the bill, but there is no evidence in her letters that she did not consider it a legal debt. It was only after respondent was being pushed for payment that any defense arose concerning the effectiveness of the operation. We see no legal reason for prolonging this suit. We must hold that the evidence does not uphold the judgment that Dr. McIntosh take nothing; we hold that Mrs. Mills take nothing by her cross complaint.

The cause is reversed and remanded to the district court with instructions to enter a judgment of $300 for the appellant, Dr. McIntosh.

MR. CHIEF JUSTICE JAMES T. HARRISON and MR. JUSTICE DOYLE concur.

MR. JUSTICE CASTLES, specially concurring:

I concur in the results here. However, as I read this record, the only evidence is that the bill was due and owing, it was acknowledged, paid upon, became an account stated, and that there is simply no evidence to the contrary. Therefore the District Judge, in his supposed reliance on a Justice Court jury, simply did not have *any* evidence to support it. In this situation we can and do reverse and enter judgment.

MR. JUSTICE ADAIR, dissenting:

It appears to me that the judgment originally entered in the district court in this cause was and that it continues to be correct and just and that such district court judgment should be affirmed by this the Supreme Court of Montana. Accordingly I dissent to the reversal by the State Supreme Court of the judgment heretofore made and entered in favor of the surviving widow Elaine C. Mills and I likewise dissent to the remanding of said district court's judgment with instructions to enter judgment in favor of the plaintiff, Dr. James E. McIntosh, and against Elaine C. Mills the surviving widow of the decedent, Glenn Mills.